## No. 1314.

### SUCCESSION OF MARCELITE GUIDRY.

The law does not require that proceedings be instituted to remove an executor who has failed to furnish security, when ordered to do so, under the provisions of Article R. C. C. 1766. The law is self-operative.

The failure to furnish the security within the delay fixed, *ipso facto* removes the delinquent. A vacancy is thereby created instantly, which can be filled, after due notice, by the appointment of a dative executor.

A child who has furnished alimony and thus maintained an ascendant in need is not entitled to recover the value thereof from the latter's insolvent succession. Having paid a *debt*, he cannot claim to be a creditor. A transfer of his claim conveys no right which he did not possess.

APPEAL from the Thirteenth District Court, Parish of St. Landry. Lewis, J.

*Henry L. Garland* for Opponent and Appellant.

*Laurent Dupre* and *T. L. Tansey, contra.*

The opinion of the Court was delivered by

BERMUDEZ, C. J.    The account presented by Laurent Dupré, as dative executor of the deceased, is opposed by Lastie Dupré, a mortgage creditor for upwards of $2000.

The opponent charges that Laurent Dupré is not the dative executor of the deceased, because his appointment is unwarranted and null, for the reason that the executor appointed by the deceased was never regularly removed from the trust by any judgment of court, and that, therefore, Laurent Dupré has no capacity to represent the succession.

He further charges, that the sum of $1440 allowed in the account to Mrs. Alcée Dupré, for board, lodging, nursing, etc., to the deceased, during two years, including her last illness, is not due.

He, besides, opposes other items which do not appear to be seriously contested.

The district court maintained the validity of Laurent Dupré's appointment, allowed half of the sum to Mrs. Dupré, part with privilege on the proceeds of the real estate sold, and part as an ordinary claim.

It also passed upon the other items.

The opponent, having died, his executor appeals from this judgment, and Mrs. Dupré asks that it be amended, so as to allow her the entirety of the claim in her favor, on the account.

So that there are only two questions involved : *first*, the validity of Laurent Dupré's appointment ; *second*, the reality of Mrs. Alcée Dupré's claim and the security allowed for payment.

## I.

It might suffice to say that the opponent cannot be heard to attack the appointment of the dative executor, not only because he does so collaterally, but also because he lays no claim himself to the · trust; but it may be preferable to determine the question at issue.

It appears that Mrs. Guidry had appointed Alcée Dupré as the executor of her will, dispensing him from giving security, and that he was confirmed and qualified as such; that Lastie Dupré, the present · opponent, availing himself of the privilege accorded by Article R. C. C. 1677, obtained a peremptory order which was duly served, requiring the executor to furnish security, within thirty days after notice in the sum of $2780, exceeding by one-fourth the amount of his claim; that the delay allowed expired without such security being furnished; that thereupon, Laurent Dupré petitioned for letters of dative testamentary executorship and his application was ordered to be published; that, at the end of the time fixed for opposition, none having been filed, he was appointed, took the oath and furnished the bond required by law.

The contention is, that before this application could have been filed and the appointment conferred, it was an essential condition precedent, *sine qua non*, that Alcée Dupré, the regular executor, should have been proceeded against, in a direct action and if the circumstances justified, he could then be removed.

In support of this position, counsel refer to a number of authorities, the correctness of which cannot be disputed; but which have no application to the present matter, for the reason, that the issue now presented is raised on a state of facts, controlled by a law which was not in existence when those cases were decided and which has served as a guide for the proceedings in the instant case.

Indeed, the article referred to, 1677 R. C. C., is the result of an amendment of Article 1670 of the code of 1825, made by the legislature of 1868, (p. 117).

It justifies the proceedings instituted by Laurent Duprè, from beginning to end.

It declares, in as emphatic language as could be used, that should the executor, who has been ordered to furnish security, fail to do so within the delay allowed, the failure shall, *ipso facto*, work an immediate removal and the judge shall appoint a dative executor.

The legislature possessed the power of enacting such a remedial law. It has done so, making it self-operative.

To contend otherwise, is to hold that the law means "*shall not ipso*

*facto,*" when it says, "*shall ipso facto;*" in other words, to make it say the reverse of what it does.

No proceeding was therefore necessary to remove Alcée Duprê. The moment that the delay allowed expired, after notice, without his giving the demanded security, he ceased to be the executor of the deceased and a vacancy was created, which could be and was filled.

## II.

The next matter to be considered is the item of $1440, in favor of Mrs. Alcèe Dupré, recognized by the dative executor, for expenses of last illness.

It is contended that the claim, if it ever existed, belonged to Alcée Dupré, that it could not have been enforced by him, in as much as it was for alimony furnished by him to his necessitous mother, the deceased; that, if it could be urged, it formed part of the community property between him and his wife; that the claim cannot be recovered by the latter, but by the former only ; that the *dation en paiement* which he made to her of it, since his mother's death, has not validated it, any more than if it had not passed from him to her, and that it is not entitled to a privilege.

There can be no doubt that Mrs. Guidry being in penurious circumstances, her son was bound in law and in conscience, to provide for her, as well in health as in sickness; for it is written, that children are bound to maintain their father and mother and other ascendants who are in need. R. C. C. 229 ; N. C. 205.

The French text of Art. 229 of the R. C. C., as found in the Code of 1825, and which is taken from Article 205 of the Napoleon Code, reads:

"Les enfans *doivent* des alimens à leur pére et mére et autres ascendant qui sont dans le besoin ; " litterally meaning :

" Children *owe* alimony to their father and mother and other ascendants who are in need."

The word " *doivent* " (owe) implies a *debt* imposed upon them by law in that respect, for the satisfaction of which a civil action lies. (R. C. C. 233.)

The fulfillment of that obligation does not transform the child into a creditor, capable of claiming reimbursement in any contingency. He has paid a *debt* imposed upon him by law, and simply remains in the condition of a debtor who has discharged an obligation.

The case would be diffierent if, instead of being the only child, the son had had brothers or sisters, for in that case, as each and all would have been bound to provide entirely, as it were *in solido*, for the wants and

43

necessities of the mother, the child performing his obligation could have had recourse *against the other issue* for contribution.

He could, had the mother died solvent, have made good his claim against their share in the succession, but such is not the case here.

Mrs. Guidry has died insolvent, leaving property burdened for much more than it realized, and which is the common pledge of her creditors.

To cast upon that estate the charge in question, would be to shift the burden of alimony from the shoulders of the children, to that of the creditors.

Had a stranger provided for Mrs. Guidry as her son has done, he would surely have had the right of claiming payment, for the obvious reason that the law has not made it his *duty* to maintain the needy, and recognizes in him, where he has not done so in a spirit of liberality, the right of repeting, even with a privilege, for a certain period, the amount of his disbursements.

After an elaborate discussion on the subject now under consideration, Marcadé concludes that the *duty* of maintaining the needy ascendants is a *debt* imposed by law on the descendants. Vol. 1, p. 534, No. 709 *et seq.*

Baudry Lacantinerie, an eminent professor, says that those obligations are dictated by the law of nature. The father has given life to the son and the latter must assist him in preserving his own, if his means are sufficient. This author looks upon the obligation as a sort of restitution. "*Parentibus alimenta non praestatis, sed redditis. Iniquissimum enim quis dixerit patrem egere, quum filius ejus abundaverit.*" Vol. 1, p. 339, No. 589.

Laurent, in his admirable commentaries on the French Code, propounds the question, whether he who has supplied alimony can claim payment for the same, and says that the solution involves serious difficulty.

He does not, however, hesitate to state that a first point is certain, namely : that, according to general principles, there exists no room for repetition. He who has furnished the alimony has paid what he owed, for, alimony is a *debt*. Therefore he to whom it has been furnished has received what was due him. Repetition could be admitted only where one, believing himself bound, was not really so, and has in error supplied the alimony. In such a case the principle of claiming what was unduly paid would control. Vol. 3, p. 107, No. 79.

Fuzier Herman, who edits with surprising ability a new edition now being published, of the French Code, to which are appended notes and references which exhibit great researches and exactness, an-

nounces, that the care and assistance furnished by a son to his father in need can be viewed only as the fulfillment of a filial duty, and cannot create in favor of the son a claim against the succession of the father. Hence, if the father by his will has acknowledged himself a debtor to his son, because the latter had supplied his wants, this disposition will be considered as constituting a liberality.

Reference is made to a decision of the Court of Rennes, 9 November, 1878, and to Aubry & Rau, t. 6, p. 73, section 547, note 3.

See Code Civil, annoté par Fuzier Herman, Art. 205, p. 283, section 3. *Repetition* des aliments., Nos. 64 and 65.

Those authorities settle the question beyond cavil.

It will not avail, in the instant case, to say that Mrs. Dupré is a creditor, while her husband may not have been one.

She holds by a *dation en paiement* from *him*, and has acquired no greater right than he himself possessed. As he could not have claimed, she cannot do so in his place.

She is not separated in property.

Admitting that she attended exclusively to Mrs. Guidry and could have claimed remuneration, any earning and payment would have fallen into the community, and compensation, if due, would have been asserted by the husband, as head and master. But it has been said that he had no claim to urge for the alimony supplied.

The *item* of $1440 placed on the account, should have been stricken out entirely as not due either to Alcée Dupré or to his wife, and the creditors of the deceased must be relieved from the burden of the same.

We do not consider that we are called upon to pass upon the correctness of the judgment of the lower court, reducing certain small items placed on the account, and which were opposed, as we hear of no complaint from either side.

It is, therefore, ordered and decreed that the judgment appealed from be reversed so far as it allows Mrs. Dupré part of the item of $1440 figuring in her favor on the account, and that said amount be stricken entirely from said account as not due by the succession.

It is further ordered and decreed that in other respects said judgment be affirmed, the costs to be paid equally by appellant and appellee.