In this suit, Otis Muse, one of the 12 children, all heirs of his deceased mother, Margaret Muse, seeks to recover from his co-heirs their virile share of $2,400 which he claims is due him for services rendered his mother while she was still living, by taking care of a farm which she owned herself and also another farm of which she owned an undivided half and had the usufruct as widow of her deceased husband of the other half. He claims that the services he rendered extended over the period from May, 1938 to June, 1946, when his mother died and he values them at the sum of $25 per month for the whole period thus making his claim the sum of $2,400 which he prays judgment for.
Shortly after her death, his mother's succession had been opened on the petition of all of the heirs to be recognized and placed in possession of her property. In the petition filed there was an allegation to the effect that there were no debts due by the succession and an ex parte judgment was rendered by the court recognizing them all, including the plaintiff, as heirs, and placing them in possession of the estate. We might mention here, in this connection, that the plaintiff's name was used as one of the petitioners without his knowledge and he took no part whatever in the proceedings. There was no plea of estoppel or any other plea urged by reason of these proceedings and that is not an issue in the case.
[1, 2] The demand is one for a sum which places the matter in dispute beyond the jurisdiction of this court but as the district judge rendered judgment in favor of the plaintiff for the sum of $750 with which plaintiff is apparently satisfied since he has not answered the appeal, we are of the opinion that the original demand was inflated and as that is a matter which this court can take judicial cognizance of, we will entertain jurisdiction of the appeal and decide the question at issue.
[3] The defense is a denial that plaintiff is entitled to recover anything whatever as, it is alleged in the answer, he was more dependent upon his mother for support than she was upon him and that all that he did was merely menial labor on the farm for which he was amply recompensed by *Page 130 
the support given him at his mother's home during his entire life time and especially after the death of his father.
As stated however, after trial of the case, the district judge rendered judgment in favor of the plaintiff and the defendants have taken this appeal.
Prior to filing the answer the defendants had filed an exception of no right or cause of action and one of them, Florence Gibson, had additionally filed an exception to the jurisdiction of the district court rationae personae. A minute entry of April 29, 1947 shows that one of the exceptions, at least, if not both, was referred to the merits. If only one was, we presume it was the exception of no right or cause of action. If the exception to the jurisdiction of the court was not disposed of in that manner it seems to have been abandoned. There is no testimony in the record to indicate that any one of the defendants did not reside within the jurisdiction of the district court of East Feliciana Parish, and we believe that all parties are properly before the court.
The exception of no right or cause of action seems to be based on two propositions of law, the first being one that is embodied in art. 229 of the Civil Code to the effect that "children are bound to maintain their father and mother and other ascendants, who are in need;" and the second being found in art. 1759 of the Code which prescribes that "no suit will lie to recover what has been paid or given in compliance with a natural obligation."
A further proposition of law which presents itself in the case, as we view it, is the one considered by this court in the case of Succession of Berthelot, La. App., 24 So.2d 185, to the effect that services rendered by a son or a daughter in the way of nursing and attention to the physical needs of their parents are presumed to be gratuitous and that they will not be reimbursed for such services unless it is shown that there was a promise made by the deceased parent to recompense, which promise may arise either from an expression of intention on the part of the decedent or by some testamentary disposition he may have made.
[4] The proof offered by the plaintiff in this case with regard to the services he rendered shows that he is claiming on a quantum meruit and there is no proof whatever tending to show any intention on the part of his deceased mother or any promise by her to recompense him. The proof adduced by his own testimony, as well as by that of some of his co-heirs and some other witnesses, is disputed by the defendants and their witnesses. Evidently the trial judge found that he had produced the preponderance of the testimony to support his claim and it would seem that he overruled the point of law raised by the defendants on their exceptions to the effect that under art. 229 of the Civil Code children are bound to maintain their parents who are in need and also the other point to the effect that it was a natural obligation on plaintiff's part to render this service and that no suit could lie for recovery.
The other point of law that services rendered by children are presumed to be gratuitous and that such presumption has to be rebutted by proof of a promise to pay was evidently not considered as it is not mentioned anywhere in the record. We think it is important and that it must have some consideration on our part in view of our decision in the case of the Succession of Berthelot, supra.
Since there is no proof whatever about a promise to pay on the part of plaintiff's mother for the services plaintiff claims to have rendered her it is necessary for us to decide in the first place whether services such as he claims to be compensated for are presumed to be gratuitous.
In the Berthelot case we cited in support of the proposition of law that is stated, the case of Farrar v. Johnson,172 La. 30, 133 So. 352, 353, in which the Supreme Court stated the law as follows: "It is always a presumption, when such services are rendered by a son or daughter to the parent, that the services are gratuitous; and the law will not allow compensation in such cases without proof of a promise or express intention on that part of the parent to pay for the services." In the Berthelot case we held that there appeared from the *Page 131 
testimony, an intention on the part of the parent to pay and we accordingly affirmed a judgment of the lower court which had permitted a daughter to recover for services rendered to her father.
In again considering the case of Farrar v. Johnson, which stated the law as quoted we find the statement followed by the citation of six cases. The first is the Succession of Ploton, 36 La. Ann. 211. The claim there was presented by a commission merchant doing business in New Orleans for services rendered to the deceased who resided in the Parish of Terrebonne. The claimant seems to have been acting under a mandate given him by the decedent and that seems to have been the only relation between them. The principle of law regarding gratuity of services was correctly applied in that case because art. 2991 of the Civil Code specifically provides that "the procuration is gratuitous unless there has been a contrary agreement."
The second case cited is Estate of Littell 50 La. Ann. 299, 23 So. 314, which we find involved a claim of a doctor for services rendered to the decedent against whose estate he had presented a bill for a large amount and which was rejected because it was shown that he had been recompensed by various benefactions of the deceased during her lifetime.
The next case cited is Succession of Oubre, 1.9 La. 516, 33 So. 583 in which the claim for reimbursement for services rendered to the deceased was made by one of his brothers. Apparently it was rejected on the ground that it had every appearance of being stale and was obviously an afterthought on the part of the claimant.
Next we come to the case of Succession of Daste, 125 La. 657, 658, 51 So. 677, 679, 29 L.R.A., N.S., 297 in which the court was dealing with the claim of a foster daughter against the succession of her foster father. The opinion in that case states that "the opponent (who was the claimant), as the foster daughter, owed some duty to the deceased. We are not certain that the services were such as would justify a judgment in her favor." Referring then to Wood on "Master Servant", evidently a common law authority, the court, for the first time, as far as we have been able to ascertain, seems to have given consideration to the proposition of law that services rendered to near relatives such as a father, grandfather, brother and other relatives cannot be recompensed in the absence of an express contract or circumstances equivalent thereto and that the law will not imply a promise to pay for them. Two Vermont cases are cited in which it was held that an adopted daughter, after becoming of age, could not recover for services without an express agreement to establish a promise to pay therefor. It is also stated that there was something to the same effect held in a Missouri case, a Pennsylvania case and a New York case. The court stated that "the French authorities also give effect to the ties of kindness as giving rise to services gratuitously rendered." But no French authority is cited, nor is there any reference to any Louisiana decision.
The next case is that of Latour v. Guillory, 134 La. 332, 64 So. 130 in which the syllabus on the point with which we are concerned and which reflects the decision of the court reads as follows: "The claim of a son-in-law against one of seven children for alimony furnished to the father will be denied when it appears that the father had enjoyed the usufruct of the estate by common consent, and no call had been made on the plaintiff for a contribution." It is rather significant that in that case the court states that "where there are a number of children, the obligation to maintain the father is solidary. The richest is not obliged to contribute more than the others to the discharge of the common debt."
The last case cited is that of the Succession of Brand,162 La. 880, 111 So. 267 which had to do again with the case of a claimant who was a foster child and not a child by blood of the deceased; so that case also does not decide the important question as to whether the services of a son or daughter by blood carries the same presumption as was stated in the Farrar case on which we relied in the Berthelot case. *Page 132 
Could it be then that this presumption of gratuity of services rendered by children to a parent in need is one which arises out of the provisions of art. 229 of the Civil Code itself, under which children "are bound to maintain their father and mother and other ascendents, who are in need"? We have underscored the words "who are in need" because it seems that those are the important words of the Article and which bind children to the obligation of supporting their parents who are in such circumstances, for naturally parents who are not in need do not have to be maintained by their children. That would be the only condition, we think, under which a presumption might be created that children who render such services and who are called upon to perform them by the terms of the Article cannot recover for the value of such services as they may have rendered.
[5] That seems to be the import of the decision in the case of Succession of Guidry, 40 La. Ann. 671, 4 So. 893, 895, where the court stated: "There can be no doubt that Mrs. Guidry, being in penurious circumstances, her son was bound in law and in conscience, to provide for her, as well in health as in sickness; for it is written, that children are bound to maintain their father and mother and other ascendants who are in need, Rev.Civil Code, art. 229; Code Nap. art. 205." In that case services had been rendered by an only son to his mother and after holding that he was not entitled to recover for the reason that he had simply "paid a debt imposed upon him by law," the court nevertheless added that "the case would be different if, instead of being the only child, the son had had brothers or sisters, for in that case, as each and all would have been bound to provide entirely, as it were, in solido, for the wants and necessities of the mother, the child performing his obligation would have had recourse against the other issue for contribution. He could, had the mother died solvent, have made good his claim against their share in the succession, but such is not the case here. Mrs. Guidry has died insolvent, leaving property burdened for much more than it realized, and which is the common pledge of her creditors." The court in that case refers to several French Commentators who wrote on the subject of the obligation of a child to his parent to support its holding that the child in the case it had under consideration, and who was an only child, could not recover the value of the services rendered by him to a penurious mother, from her insolvent succession, on the ground that by rendering such services he had only paid a debt which the law imposed on him as a child. But we cannot overlook the fact that the court also stated the hypothetical case in which he could recover if there were other children and the parent's estate would be solvent. In that event, it is stated, he would have his recourse against the other issue for contribution.
The hypothetical case stated is exactly the situation which is presented before us in this case and what the plaintiff is seeking to do is precisely what the court stated he could do. As one of 12 children he is endeavoring to obtain recourse against the other 11 for their virile share of the value of the services rendered by him to his mother who, far from being in penurious circumstances was the owner of 15 acres of land in her own right and the undivided half owner and usufructuary of 120 acres more, all of which was unincumbered when she died.
There is an older case which holds the very thing that the court stated would have made a difference in the Guidry case if there had been more than one child who rendered services to the parent. That is the case of Estate of Marie Ann Olivier, 18 La. Ann. 594. One of the sons of the deceased, who had been appointed administrator of her estate, claimed the sum of $266.74 for having furnished his mother with certain provisions, for several years before she died. The lower court had rejected the claim on the ground that it had not been sufficiently proved. The Supreme Court however reversed the judgment of the trial court stating that, considering the relation which must naturally have existed between a mother and a son, it was of the opinion that the proof was sufficient and that the claim should have been allowed. *Page 133 
Granting therefore that there is, in certain cases, a presumption of gratuity of services rendered by a child to its parents which can only be overcome by proof of an intention or an agreement of some sort on the part of the parent to pay, under the authority of the last two cases cited, we do not think that the presumption arises in this case and therefore proof of such intention or agreement is not necessary. It remains then for us to decide whether plaintiff has supported his claim by sufficient and satisfactory proof.
[6] This we are inclined to believe he did. Besides his own testimony we find that of one of his sisters and also that of a disinterested witness that he did render the services claimed by him and although it may be that the proof is rather indefinite about the exact number of years they were rendered, we would say that for the last two years of his mother's life, at least, when she was paralyzed, he did attend to her personal wants and to the running of her farm. There is not much contradictory proof except by one or two of his co-heirs, one of whom especially said that she helped also to support her mother. But the most that she did was to bring her a few extra things from New Orleans, where she lived, two or three times a year. Otherwise it was attempted to show that the plaintiff is simple and weak-minded and therefore incapable of performing the services he claimed to have rendered. We believe however that although he may not have been as bright as some of his co-heirs the proof is clear that he was able to do hard manual work and this is what he claims he did, that is he plowed the field, hoed the grass, cut wood, cultivated the crops and in a general way tended to his mother's farm turning over all the proceeds to her.
The amount he claims of $25 per month appears to be reasonable and we are not disposed to hold that the trial judge was wrong when he fixed the time he was entitled to recover for, at thirty months, which of course makes the sum of $750, the amount of the judgment rendered in his favor.
Judgment affirmed at the cost of the defendants, appellants herein.