39 So.2d 750

**Succession of DUGAS.**

**In re BREAUX.**

No. 38920.

Feb. 14, 1949.

Rehearing Denied March 21, 1949.

C. Arthur Provost, of New Iberia, for exceptor, opponent, appellant, and applicant.

Mestayer & Mestayer, of New Iberia, for administratrix, appellee, and respondent.

FOURNET, Justice.

This case was previously before us on an appeal taken from the judgment of the district court dismissing the appellant's opposition to the final account filed in the Succession of Erazie Dugas, as well as the opponent's claim as an heir to a fourth of the decedent's estate, but the amount involved being less than $2,000 we transferred the matter to the court of appropriate jurisdiction, the Court of Appeal for the First Circuit. Succession of Dugas, 211 La. 544, 30 So.2d 425. The matter is now before us for a review of that court's affirmation of the lower court judgment, Succession of Dugas, La.App., 33 So.2d 133, on a writ óf certiorari granted the opponent.

It appears that Erazie Dugas, a deaf mute, died intestate on April 10, 1943, leaving an estate consisting of a small tract of land that was appraised at $1,200 but brought $1,500 at the subsequent sale ordered by the court. She left surviving her as heirs the children of two pre-deceased brothers and two sisters, Mrs. Cecile D. Dugas and Mrs. Amelie Dugas Breaux. The former, as administratrix of the succession, filed a final account showing as the only asset the $1,500 received from the sale of the property, which amount she proposed to dispose of by paying funeral debts amounting to $95.32 and legal charges of $212, with the remainder to herself as a creditor of the succession in the amount of $4,291, compensation due for the care, maintenance, and custody of the decedent, all in accordance with the statement filed when she obtained the court's order for the sale of the property, which statement shows the claim covers the period from March 1, 1926, to April 10, 1943, at the rate of $1 per day, or a total of $6,246. To this amount she added a claim for $170 for

taxes and maintenance of the property for 17 years, aggregating in all a sum of $6,416, less a credit of $2,125.

After the exceptions of vagueness to the claim of the administratrix had been overruled, Mrs. Amelie Dugas Breaux, by way of opposition, sought to recover a fourth of the estate, that is, the sum of $298.17, claiming the amount listed by the administratrix was not due and owing. Before judgment was rendered the claimant died and she was succeeded in this litigation by Dumas A. Dugas, appointed by the court as the administrator of her estate and against whom the proceedings were continued. There was judgment in the lower court dismissing the opposition.

Counsel for the opponent, invoking the rule of law relative to services rendered pursuant to a procuration or mandate as set out in Article 2991 of the Revised Civil Code, argued in the courts below, as he does here, that providing a person with board, lodging, and maintenance, without any contract either express or implied, is presumed to be gratuitous; in any event, that the claim was not legally proved as required by Act 207 of 1906, as amended by Act 11 of 1926.

The learned trial judge in disposing of the first issue in a carefully considered and well-reasoned opinion concluded the administratrix was entitled to recover in quantum meruit for the services she rendered the decedent. It was his opinion that one in penurious circumstances, as was the claimant, barely eking an existence from the soil in a section frequently subjected to overflow, in assuming the additional burden of caring for a sister who was not only a deaf mute but was, during the major portion of the 17 years she lived with the claimant, totally blind, requiring constant supervision and care and calling for a devotion seldom encountered between sisters, was entitled to compensation for such services out of the estate of the decedent. He divided the claim into two categories, the first for the personal services rendered the decedent and the second for her board and lodging. Finding the former subject to the prescription of one year under Article 3534 of the Revised Civil Code and the latter subject to the prescription of ten years under Article 3544, he allowed recovery accordingly and, after fixing their value at 25¢ a day for services and 50¢ a day for board and lodging, he reduced the claim from $4,291 to $1,916.25. However, even as reduced, the estate of the decedent was insufficient to liquidate this amount and there was, therefore, nothing to be divided with the opponent. In disposing of the second issue, he concluded the law requiring proof of claims of this nature against a deceased person, when such claims are filed more than a year after death, had no application because "it should be considered that the claim was filed December 10, 1943, when the administratrix attached a list of debts to her petition seeking an order for the sale of the property of the succession.

This was less than one year from the death of the deceased, as she died April 10, 1943." He therefore dismissed the opposition.

The Court of Appeal in affirming this judgment reasoned that the law of procuration and mandate as found in Article 2991 of the Revised Civil Code has no application in this case since the condition under which the services were rendered in the several cases relied on by the opponent were not similar to the one now being considered but were, rather, more of the same nature as those rendered in the case of Muse v. Muse, La.App., 33 So.2d 128, and concluded the principle of law announced by this court in the case of Latour v. Guillory, 134 La. 332, 64 So. 130, is more appropriate to the facts of the case. In that case, although the court refused the claim on the facts—the son-in-law advancing the claim was actually residing with the deceased father-in-law who had been enjoying the usufruct of the family homestead through the common consent of all of the children—pointed out that the plaintiff, one of the children against whom the claim for board and lodging for the deceased was made, was under no greater obligation to support his father than any of the other five children, observing: "Where there are a number of children, the obligation to maintain the father is solidary. The richest is not obliged to contribute more than the others to the discharge of the common debt." [33 So.2d 131] The Court of Appeal, applying this principle of law to the facts of this case, reasoned that "Where one of them is afflicted as was the decedent in this case and there are more than one of the others who can render the services required, the obligation should not fall on the shoulders of only one of them. If the others let one discharge it alone that one should have recourse against the estate of the decedent if the estate is shown to be solvent." [33 So.2d 135]

While an examination of the jurisprudence on this subject shows that claims made by children of a deceased parent for services rendered the parent during his lifetime are presumed to be gratuitous unless rendered pursuant to a contract, express or implied, and recovery therefore cannot be had—particularly when the claim is for furnishing these services to parents in necessitous circumstances—as the children are only fulfilling the obligation imposed upon them by the express provisions of Article 229 of the Revised Civil Code. Succession of Guidry, 40 La.Ann. 671, 4 So. 893. But where there is more than one child, this court has held that inasmuch as this obligation is imposed upon all of the children equally, recovery may be had for the services rendered the parent by one of the children against the other children, who can be made to contribute their share ratably, and the claimant may recover this amount from the succession of the deceased parent. In re Estate of Olivier, 18 La. Ann. 594; Succession of Newton, 33 La. Ann. 621; Succession of Guidry, supra;

Latour v: Guillory, 134 La. 332, 64 So. 130; Succession of Templeman, 134 La. 798, 64 So. 718.

But this principle of law does not obtain between brothers and sisters, for the law does not impose an obligation of support among collaterals. From our examination of the cases and jurisprudence touching upon the services furnished by collaterals in such instances we find that the court, either in granting or refusing the claim, decided the case on its particular facts.

This is in accord with the general law on the subject as reflected by a reference to 71 C.J. 76, Section 37, where it is stated that "The mere existence of the relation of brother and brother, brother and sister, or sister and sister, is not sufficient per se to authorize a presumption that services rendered or board and the like furnished by the one to or for the other are gratuitous, nor does such relationship alone rebut the prima facie implication of a right to compensation arising from rendition and acceptance of valuable services, and where the circumstances repel the inference of a gift of services or support, none will be implied merely because of the blood relationship of brother and sister." See, also, 28 R.C.L. 682, Section 17.

Our examination of the record convinces us of the correctness of the conclusion reached in both of the courts below. The evidence is very meagre, consisting of approximately only four pages of the

claimant's testimony. She states her sister came to live with her at the age of 51 after the death of their mother and that she did so "Because the others did not want to take her." Her sister and her then living brother are the "others" referred to. Under examination of the trial judge it was revealed the deceased became blind shortly after the claimant took charge of her and that during the remaining 17 years of her life she required constant care, attention, and supervision, it being impossible to leave her alone at any time. The evidence further reveals that the brother and sister not only did not want to take the responsibility of caring for the decedent, but that the claimant was led to believe she would be entitled to either compensation or assistance in assuming this burden for upon the death of the mother she was handed $100 by the brother and sister and it was agreed the claimant should have the stock and cattle that admittedly belonged to the deceased. We think, therefore, that instead of claimant's claim coming "with poor grace," as contended by counsel for the opponent, it comes with poor grace for this opponent, who refused to help her afflicted sister during these many years, to oppose the claim of the sister who was willing to do so and who, in this way, relieved the opponent of any responsibility in the matter.

Counsel has apparently abandoned the pleas of prescription, except for the alternative suggestion that if the claim is for

board and lodging as an *innkeeper* or for *nursing* the prescription of one year should be applied, but since the claims do not fall into these categories, this contention is without merit.

We now pass to the opponent's further contention that the claim was not proved as required by Act 207 of 1906 as amended by Act 11 of 1926.

■ In White v. Succession of Candebat, 210 La. 995, 29 So.2d 39, 40, we pointed out that " * * * a claim against a deceased person, unlike ordinary cases requiring the plaintiff to prove his claim if more than $500 'at least by one credible witness, and other corroborative circumstances' (Article 2277 of the Revised Civil Code), * * * can only be established by the 'testimony of at least one credible witness of good moral character, besides the plaintiff,' that is, *if such action has been brought within 12 months after the death of the decedent, otherwise parol evidence is not admissible to prove the claim."* Citing Act 207 of 1906, as amended by Act 11 of 1926. (Italics ours.)

■ Section 1 of that act provides "That parol evidence shall be incompetent and inadmissible to prove any debt or liability upon the part of a party deceased, if a suit upon the asserted indebtedness or liability shall have been brought more than twelve (12) months after the death of the deceased."

When the administratrix filed her final account on March 15, 1944, in which account she included the claim for her services to the decedent, she filed a suit within 12 months following the decedent's death within the meaning and contemplation of Section 1 of this act as that account, when duly homologated by the trial judge, became res judicata as to all interested parties who did not timely oppose it and will also become res judicata as to the claimant and the opponent here when this judgment becomes final.

■ Although we are convinced from the record that the services were rendered and that the value placed thereon by the trial judge is fair and reasonable, it appears that the claimant has failed to prove her claim precisely as required by Section 2 of the act, that is, by the testimony of at least one credible witness of good moral character, *besides the claimant*. This being so, we are powerless to consider the testimony of the plaintiff in this case until it has been corroborated. We will, therefore, in the interest of justice remand the case in order that the claimant may be afforded the opportunity to supplement this deficiency.

For the reasons assigned the case is remanded to the lower court for the sole purpose of hearing further evidence in substantiation of the claim that Mrs. Cecile Dugas rendered the services claimed to the decedent for which she seeks compensation. All costs of this opposition are to be borne by the opponent.

O'NIELL, C. J., does not take part.

On Application for Rehearing.

PER CURIAM.

Appellant, Amelie Dugas Breaux, in her application for rehearing contends that our decree in this case denies to her the right to introduce evidence to contradict, rebut, or offset the evidence to be offered by Mrs. Cecile Dugas in support of her claim for services rendered, and further denies to appellant the right to modify or explain her position.

Our decree does not, nor was it intended to, deny to appellant any such right.

A rehearing is denied.