ENOS c. McCLENDON, Jr., Judge ad hoc.
This succession proceeding was halted in the District Court when the “provisional account” filed by one of the two co-administrators was opposed by the other' co-administrator. The “account” set up claims of the co-administrator filing same and of one of his sisters.
From a judgment in the lower court reducing the co-administrator’s claim from $31,178.34 to $907.38 and rejecting his sister’s claim entirely this appeal was taken.
The opponent answered the appeal. By this answer she raised for the first time the want of capacity of the other co-administrator (appellant) for failure to qualify before filing the “provisional account”. She also averred that the lower court erred in allowing any part of appellant’s claim and prayed that it be rejected completely.
Mrs. Vincenza Ferrara, widow of Arc-angelo Catalinotto, died intestate on January 25, 1956, in the City of New Orleans, which was her residence and domicile. Her husband had been dead some forty years. She was survived by eight children. She had been semi-invalid for about fifteen years and was confined to her bed for the last fourteen to sixteen months before her death. Marcel Catalinotto and Josephine Catálinotto, her two unmarried children, lived with her and cared for her all of these years.
According to the inventory filed in the proceedings, her estate consisted of an undivided one-half interest in an improved lot at the corner of Joliet and Hickory Streets in New Orleans and the contents of the residence thereon. Her interest in the real estate was valued at $11,250.00 and in the movable effects at $45.50.
Marcel Catalinotto and Mrs. Antonina C. DiGiovanni, another child of decedent, were appointed co-administrators of the estate on September 10, 1956, on their joint motion and were ordered to furnish bond in the amount of $10,000.00. Letters were issued to Mrs. DiGiovanni on November 14, 1956, declaring her compliance with the requisites of law.
At this point it is noted that the transcript is incomplete for the reason that appellant and appellee availed themselves of the provisions of LSA-R.S. 13:4443 and designated those portions of the record which would constitute the transcript rather than having the Clerk send up the entire record. By so doing the bond of Mrs. DiGiovanni was omitted as were the Letters of Co-Administration allegedly issued to Marcel Catalinotto on December 26, 1958, according to appellee’s answer to this appeal. This answer alleges that a certified copy of these letters issued to Marcel are made a part thereof, but they do not appear annexed thereto or elsewhere in the record. Brief filed on behalf of W. M. Stephenson, styled “Co-administrator, Ap-pellee”, further indicates the incompleteness of the transcript since nothing to indicate his appointment appears therein. Per *680 sonal inquiry directed to this party by the Court revealed that he had been substituted for Mrs. DiGiovanni since the appeal was lodged.
The "provisional account” set forth the ■claim of Josephine Catalinotto in the total amount of $3,962.00 for laundry done for ■decedent ($1,197.50) and care rendered decedent ($2,764.50) in the period from September 27, 1954 to January 24, 1956. The ■only other claims set forth were those of the co-administrator himself as a creditor. His $31,178.34 total consisted of medical, hospital, nurses and doctors’ charges ($7,-851.65); insurance and taxes on the real estate ($4,114.15) ; paving liens and miscellaneous items for maintenance and rental of the property ($3,425.74) ; mortgage indebtedness on the real estate paid in the period 1928 to 1933 ($5,212.76) ; mortgage indebtedness paid on the real estate in the period 1933 to 1950 ($10,564.04).
During the trial of the opposition the lower court sustained a plea of three years’ prescription to Marcel’s claims and ordered an audit of his supporting documents limited to the three year period immediately prior to date of decedent’s death. Thus limited, the accountant appointed by the Court verified none of the amounts submitted by Marcel which appeared to originate prior to January 25, 1953. He did verify $7,207.38 of expenditures by Marcel in the three year period, including the funeral bill of $717.00.
The lower court gave written reasons for judgment wherein it found that Marcel and Josephine lived with their mother in her home and that Josephine paid board at the rate of $17.00 per week, whereas Marcel paid nothing except utilities and taxes averaging $20.00 to $25.00 per month. It found he had collected $75.00 per month rental on the store building located on the residence premises and used it to pay expenses, such as nurses and doctors for his ailing mother. The Court concluded that Marcel should have been paying at least $100.00 per month as board to his mother and, without allowing any credit for the $20.00 to $25.00 per month it found he had paid, assessed these combined figures ($175.00 per month) against the verified total claim of Marcel for the three year period and reduced that claim by $6,300.00 to $907.38, which amount was approved. The Court rejected the entire claim of Josephine under authority of LSA-Civil Code Articles 229 and 230 declaring the obligation of children to maintain their parents who are in need.
The exception of no right of action was raised by the appellee for the first time in this court through the medium of an answer to the appeal. We are of the opinion that the exception is in actuality an exception of want of procedural capacity[1] and is consequently a dilatory exception which must be raised in limine in conformity with the provisions of Article 333 of the Code of Practice.
Assuming arguendo, however, that the exception was properly characterized, it must nevertheless be overruled to harmonize with the rule governing peremptory exceptions relating to form, rather than to law, enunciated in Article 344 of the Code of Practice, which makes mandatory the pleading of the exception in limine litis.
As pointed out above herein, there is nothing in the transcript of appeal to prove when Marcel Catalinotto qualified as co-administrator.
Turning then to the merits of issues raised by the appeal, we examine first the alleged error on the part of the lower court in sustaining the plea of prescription of three years filed against the claim of Marcel Catalinotto. It is our opinion that the lower court did err in this ruling and that the claim of a child to recover for services rendered to a deceased parent is a personal *681 action subject to the prescription of ten years. LSA-Civil Code Article 3544; Succession of Newton, 33 La.Ann. 621 (1881).
Where these services are continuous up to the time of death, the prescription only begins to run at death. Succession of Oliver, 184 La. 26, 165 So. 318. In the Oliver case the claimant was limited to the ten years immediately before death.
While it is true that services rendered by a child to his parent are presumed to be gratuitous, the law will permit compensation to him upon proof of a promise or expressed intention on the part of the parent to pay for the services. Farrar v. Johnson et al., 172 La. 30, 133 So. 352; Succession of Berthelot, La.App., 24 So.2d 185. It is here pointed out that counsel for W. M. Stephenson present co-administrator as set out above, may have failed to read carefully the Berthelot case cited by him. In that case, despite the language quoted in appellee’s brief, the Court affirmed the lower Court and recognized the daughter’s claim for nursing her father. The Court there said:
“However, we do find that there is sufficient proof to show that the deceased intended to reward his daughter for her services, and the presumption that her services were gratuitous is destroyed.”
Appellee further contends in answer and in brief that no proof was made of an agreement by decedent to pay or reimburse the claimants Marcel and Josephine for any services rendered or moneys advanced by them.
Appellant relies on the testimony of Marcel and Josephine corroborated by that of their sister, Mrs. Frances C. Arcement.
In order to prove a claim against a person deceased by parole evidence two things are required: First, the suit alleging the indebtedness must be brought within twelve months after the death of the deceased and, second, it must consist of the testimony of at least one credible witness of good moral character, besides the plaintiff, unless it be to corroborate a written acknowledgment or promise to pay signed by decedent. LSA-R.S. 13:3722.
 Marcel filed his “provisional account” setting up his claim and that of Josephine on January 25, 1957, one year to the day after his mother’s death. The filing of a final account by an administratrix within twelve months after decedent’s death, in which account she included claim for her services to decedent during decedent’s lifetime is the filing of “suit” contemplated by LSA-R.S. 13:3721 and 13:3722. Succession of Dugas, 215 La. 13, 39 So.2d 750 (1949).
It would appear that appellant has met the first requisite.
The corroborating testimony of two of decedent’s daughters is quite sufficient in our opinion. A portion of Mrs. Lloyd Ahten’s. testimony reads as follows:
“Q. Do you know if your mother ever promised to take care of Josephine Catalinotto for taking care of her?
“A. My mother has told me that.
“Q. What did she tell you?
“A. She told me she wanted my sister, Josephine, to get what’s coming to her and she wanted her debts paid to her son Marcel.
“Q. Did she owe any money to anybody else?
“A. Not to my knowledge.
“Q. Did she tell you anything about your sister, Josephine?
“A. She told me an awful lot.
“Q. What did she tell you about paying Josephine for her service?
“A. She wanted to see that she got paid for her service because she wasn’t married and she felt like she should have something for all the troubles she had, for all the care she had givers *682 her. She was very, very faithful to my mother until the day she died and my mother knew that.”
Mrs. Frances C. Arcement testified as follows:
“By the Court:
“Q. Well, you don’t know anything about it. Your mother told you she wanted her debts paid?
“A. Yes, she did.
“Q. Did she say to whom she owed money ?
“A. Yes, she said to Marcel.
* * # * * *
“A. She said she wanted her debts paid, and what we owe Marcel. She didn’t say what we owed him.
“Q. Whatever she owed Marcel?
“A. Whatever she owed Marcel.
“Q. Whatever she owed Marcel, she wanted paid?
“A. She wanted paid, but she didn’t specify what.”
Appellant then appears to have met the second requisite for use of parole evidence in proving the debt of a person deceased.
The next matter to be considered is the setting off by the lower court of $100.00 per month as board, which the court found should have been paid by Marcel to his mother, against the claim of Marcel as a creditor of the estate. We are unable to find from the record any evidence to justify this deduction. The court found as a fact that Josephine was paying $17.00 per week board, but a careful examination of the record reveals that Josephine herself testified she did not know how much she gave her mother. She said she did give something out of-her wages. Testimony regarding the $17.00 per week came as testimony from a sister. We question that the sister would know better than Josephine. In this connection it should be remembered that both Marcel and Josephine owned an undivided interest in the house and that the mother’s income of $75.00 per month would not have paid even the day nurse she required during the last year and a half of her life at $40.00 per week. Surely Marcel and Josephine could not be said to owe $100.00 per month board when one or both of necessity had to be supplementing their mother’s income in order to pay even her nurse’s bill. She could hardly be said to have furnished food, also, for herself and these two of her children who lived with her.
Josephine Catalinotto’s claim has been mentioned throughout herein, because of the close relation the testimony regarding it bore to that regarding Marcel’s claim and, also, to illustrate the different approach taken by the lower court with respect to the amount of board which appeared to it to be proper from two persons occupying the same house in the same capacity as well as the different result reached as to their respective claims. However, since Josephine Catalinotto did not appeal from the adverse judgment affecting her claim, no relief can be afforded her by this Court.
We believe that further consideration needs to be given the claims of Marcel and particularly the claim for principal and interest paid by him on the 1933 promissory note for $6,800.00 executed by decedent and all her children and secured by mortgage on the property owned in indivisión by them. Having paid this indebtedness owed jointly by him, his mother and his brother and sisters, Marcel is entitled to seek contribution from his co-debtors in conformity with the rationale of LSA-Civil Code Article 2104, which reads:
“If one of the codebtors in solido pays the whole debt, he can claim from the others no more than the part and portion of each. If one of them be insolvent, the loss occasioned by his insolvency must be equally shared amongst all the other solvent codebtors and him who has made the payment.”
*683 The record shows that the note was finally paid in 1950 and hence the ten year prescription applicable had not run at the time of decedent’s death. At least he should be afforded the opportunity to assert this claim properly and therefore we have, in the interest of justice, decided to remand the matter.
For the reasons assigned the judgment appealed from is set aside, and it is now ordered, adjudged and decreed that this matter be remanded for further proceedings consistent with the views hereinabove expressed.
The costs of this appeal are to be borne by the Appellee, and all other costs are to await the final determination of the case.
Set aside and remanded.

. McMahon Louisiana Practice, ed. by Henry George McMahon, West Publishing Co., St. Paul, Minn. p. 363. Also see McMahon, “Parties Litigant in Louisiana, 11 Tulane L.Rev. 527 et seq. (1937).