465 So.2d 781 (1985)
SUCCESSION OF Josephine Tramonte, Wife of Anthony LOMONACO, Sr. and Anthony Lomonaco, Sr.
No. 84-CA-203.
Court of Appeal of Louisiana, Fifth Circuit.
February 11, 1985.
*782 Gary W. Bizal, Levy & Levy, Marrero, for plaintiff-appellant.
Robert N. Clarke, Matairie, for defendant-appellee.
Before BOWES, CURRAULT and GAUDIN, JJ.
BOWES, Judge.
The present case is before us on appeal from a judgment of the district court ordering the defendant, Salvador Lomonaco, to collate $3,200.00 (subject to a credit for the balance of the decedents' bank accounts turned over by the defendant), and dismissing defendant's reconventional demand for collation. For the reasons which follow, the judgment is reversed in part, affirmed in part, amended, and, as amended, affirmed.
Josephine Tramonte Lomonaco died testate on April 6, 1974. Her spouse, Anthony Lomonaco, also died testate on October 8, 1977. Their successions were opened in a joint proceeding filed in December, 1977. After a thorough search of the record on appeal, we have been unable to discover the wills in question. However, Joseph Lomonaco, a son of decedents, qualified as executor for the estates.
*783 Joseph Lomonaco as executor filed petitions for collation against two of his brothers, Anthony and Salvador. As the matter concerning Anthony is not the subject of this appeal, we will concentrate on the petition against Salvador. Specifically, the executor contended that Salvador received $2,000 in cash, a television valued at $700.00, and the sum of $280.00 per month for 43 months, for a grand total of $14,740.00, which sum the executor sought to be collated.
Salvador answered and filed a "cross-petition for collation" against several other heirs, including Joseph Lomonaco. An answer to this demand was never filed. Subsequently the matter of the executor versus Salvador Lomonaco was set for trial for August 16, 1983. The record does not evince that the cross demand was ever set for trial.
At the trial, it was established that the elder Mr. Lomonaco had been an immigrant with a poor command of English, who had apparently abdicated the handling of his legal affairs to his wife and/or children. As of at least 1972, Mrs. Lomonaco had maintained a joint checking account with Salvador. Salvador was the son who assisted his parents in conducting their business affairs. He claimed to have been instrumental in negotiating the sale of some property in October, 1972. Following the sale, Mr. and Mrs. Lomonaco gave each of their children $1,000.00; to Salvador they gave $3,000.00 (the source of the $2,000.00 which the executor sought to have collated). Salvador paid for the funeral expenses of his mother out of funds in the joint account, with the knowledge and evidently with the consent of his siblings.
After the death of Mrs. Lomonaco, Salvador and his wife cared for his father. Salvador slept at his father's home; he and his wife provided cooking and cleaning services, as well as personal care, and continued to conduct the day-to-day business of his father, for some forty-three months, until Mr. Lomonaco was hospitalized and died. The testimony at trial clearly shows that none of the other children participated in the care of their father during this period.
Further, it was elicited at the trial, from Salvador himself, that, in October 1972, $25,000 was transferred by Salvador from the joint account with his mother to his personal account, apparently with the knowledge and approbation of both parents. The original reason for this transfer of funds is unclear; however, Salvador testified that this money was used for the subsequent care of his father. Also, Salvador stated that, in the presence of his father, one sister and one brother, he broke into a safe in his father's home, removed some five hundred dollars, and deposited it in the joint account.
At the conclusion of the hearing, the trial judge found: the $2,000.00 was a gift to Salvador from his parents and was therefore not collatable; the television set was "so inconsequential" that collation was denied; and the alleged payment for services of $70.00 per week was reasonable and not collatable. The reconventional demand was dismissed for lack of evidence. As to the $25,000.00, the trial court found that the transfer of the funds was approved by both parents, but was subject to an accounting. He allowed Salvador a credit of $2,500.00 for funeral expenses, and a credit of $2,500.00 for medical expenses over and above Medicare, which were paid by Salvador. The trial court then allowed Salvador the sum of $400.00 per month for the 3½ years in which he cared for his father, for a total of $16,800.00. Thus, the $25,000 was subject to a total credit of $21,800.00, and Salvador was ordered to collate $3,200.00. There was a final credit given to Salvador for the amount turned over to the executor from the accounts of his father and mother, this amount being unknown at trial by both attorneys.
Initially, we note that the issues and facts of this case are as complicated as the relations between the parties. The trial judge obviously did his utmost to effect both the letter and the spirit of the law in what can charitably be described as a bitter family conflict played out in the court under *784 the banner of the succession. We have found it necessary to examine the record in minute detail in order to untangle, if not simplify, the matter before us.
We note at the outset that as to petitions for actual collation, both suits must fall. Actual collation is the return in fact to the succession by the descending forced heir of property he has received from the ancestor by donations inter vivos. It is then an incident of the partitioning of the succession. See Succession of Dittmar, 458 So.2d 163 (La.App. 5 Cir.1984) and the authorities cited therein. There are no partition proceedings at the present time.
The petitions must be considered as demands for "fictitious collation" under Civil Code articles 1234, 1235, and 1505. Specifically, as we view the record before us, it appears that the demands are made in order to calculate the actual mass of the successions to enable the executor to determine the legitime of the forced heirs, and subsequently to determine whether that legitime has been impinged upon. If it is found that there is such impingement, then actual collation can be demanded incident to partition proceedings.
Each item will be considered individually.

1. The $2,000 check to Salvador
As stated above, following the sale of some real estate in 1972, each heir (child) was given a check for $1,000.00. Salvador received a check for $3,000.00. It is clear that Salvador was his parents' business manager. He began handling their affairs at least 2 years before his mother's death, paying their bills, etc. Salvador also testified that he was involved in the negotiations on the sale of the property. John Lomonaco, a cousin who was one of the purchasers, testified that he met once with Anthony Lomonaco and several others, to discuss the sale, but that Salvador was not present at that meeting. However, these statements are not contradictory inasmuch as the deal seems to have been confected after a series of negotiations. Salvador's claim that the extra money was a "commission" for his services is supported by documentary evidenceSalvador signed the agreement to purchase on behalf of his father. The trial judge found the money was a "gift". We agree.
Civil Code article 1245 exempts from collation manual gifts given a child "for his pleasure or other use." The Supreme Court in Succession of Gomez, 223 La. 859, 67 So.2d 156 (1953), held that a manual gift as such is not exempt from collation, but the donor may dispense the gift from collation. In considering how this intent to exempt a manual gift from collation may be expressed, the court considered two alternatives:
In this case we could solve the problem in one of two ways. First, we could hold that, since the manual gift (for which no form is required) is not exempt by law from collation, its dispensation from collation must be established in the manner and form provided by Article 1232 of our Civil Code, that is, by a declaration that the donation is an advantage or extra portion made in a written act before a notary and two witnesses. Second, we could hold that the donor's intent to dispense collation of a manual gift could be established by the facts and circumstances of the case. Under this latter holding the donee would have the burden of establishing the intent to dispense by strong and convincing proof so as to overcome the presumption of collation, for under our law, where the donor has remained silent, collation is always presumed. Art. 1230, Civil Code.
In Gomez, the court did not choose a theory, since under either solution in that case collation was necessary.
Later decisions have apparently opted for the "facts and circumstances" approach. See, for example, Succession of Skye, 417 So.2d 1221 (La.App. 3rd Cir. 1982).
Utilizing this approach, we cannot say that the trial judge was manifestly erroneous. Dispensation may be tacit, and the trial judge can infer it from the circumstances *785 of the case. The inference drawn by the judge in the present case is supported by the record before us. The trial court was involved in this case for nearly five years before the hearing in question, was well acquainted with the facts and the parties, and was in a good position to evaluate all the factors. The testimony as to the relations between the parties and the decedents, and to their customary dealings with one another, convincingly rebut the presumption of C.C. 1224 that the parent (ancestor) intended absolute equality in the final distribution of his property. This portion of the judgment is affirmed.

2. The Television Set
Plaintiffs alleged that the defendant purchased a television set with his father's money, and then retained the set. Defendant admitted that he used his father's money (part of the $25,000 which he admitted taking) but was uncertain as to the purchase price. Whatever the purchase price, the cost of the set is simplicitly taken into consideration in ordering defendant to account for the $25,000, infra. To order a separate accounting would be to order him to account twice.

3. The payments of $280.00 per month for 43 months
The trial judge found the defendant paid his wife $70.00 per week for five months, as alleged by defendant. The plaintiff did not prove otherwise. Therefore, there is no manifest error in the trial court's finding and this portion of the judgment is affirmed.

4. The $500.00 taken from the safe
Salvador admitted to taking $500.00 from his parents' safe and depositing it in the joint account he had held with his mother. However, earlier in the succession proceedings, Salvador had turned over funds in that account to the executor. The Tableau of Distribution filed by the executor into the record shows the amount in that account turned over was $1,874.34. The $500.00 in question has therefore been accounted for and returned to the succession.

5. The $25,000 and the credits given
It is undisputed that Salvador in 1972 transferred $25,000 from the joint account to his own account. The trial judge found, and we agree, that Mr. and Mrs. Lomonaco were aware of and approved of the transfer. As the more or less unofficial business manager of his parents, the transfer was effected in order to simplify these business transactions wherein he paid his parents' bills. There was no evidence in the record to indicate that the money was, under C.C. Arts. 1227 and 1228, for the use and benefit, directly or indirectly, of Salvador; rather, the record supports a characterization of this sum as funds to be expended for the use and benefit of Mr. and Mrs. Lomonaco. This relationship is more comparable, though less strict, than that of agent (Salvador) and principal (the Lomonacos). As such, the $25,000 is not subject to collation, but more properly to an accounting.
Therefore, we are not confined to the stricter proof required in Succession of Gomez, 223 La. 859, 67 So.2d 156, 163 (1953) and its progeny.
Plaintiff's strenuously-argued contention, that the defendant did not prove by documentary evidence the exact amounts expended on behalf of the elder Lomonacos, conveniently ignores the fact that, as administrator, plaintiff had subpoenaed these selfsame records with the expressed intention of proving that Salvador had illegally retained funds from his parents. After several motions by defendant prior to a trial on the issues presently before us, the plaintiff refused to produce these records at trial, with the exception of isolated checks and statements by which he sought to prove some of his claims. This refusal to produce evidence in this particular fact situation raises a presumption that the evidence was unfavorable to plaintiff, since plaintiff could have rebutted defendant's claims with the checks. Therefore, plaintiff will not be heard to complain that the *786 funeral expenses and medical expenses of Anthony Lomonaco, Sr. were not proven by documentary evidence. Also, Mr. Lomonaco in this case apparently dispensed with the necessity of keeping an exact account. In a similar case of Carrau v. Chaptotel, 16 So. 873, 47 La.Ann. 408 (La. 1895), in which a child assisted her mother in collecting rents, and in which a sibling heir demanded an accounting, our Supreme Court said:
We do not think the plaintiff can exact that of the agent which was dispensed with by the supposed principal nor that this court can compel an account, in view of the testimony, that defendant has no books or data on which to meet such requirement.
Further, it is well established that services such as board, lodging, laundry, and nursing are such for which a donor may make a remunerative donation. Lamkin v. Hanna, 135 So.2d 659 (La.App. 2nd Cir.1961) and the cases cited therein. Certainly then, if such services are of a degree and nature for which a child has the right to expect remuneration from a parent, and not merely those ordinary services rendered by a child to a parent, such services can be the subject of a credit given in the present case.
Alternatively,
... an examination of the jurisprudence on this subject shows that claims made by children of a deceased parent for services rendered the parent during his lifetime are presumed to be gratuitous unless rendered pursuant to a contract, express or implied, and recovery therefore cannot be hadparticularly when the claim is for furnishing these services to parents in necessitous circumstancesas the children are only fulfilling the obligation imposed upon them by the express provisions of Article 229 of the Revised Civil Code. Succession of Guidry, 40 La. Ann. 671, 4 So. 893. But where there is more than one child, this court has held that inasmuch as this obligation is imposed upon all of the children equally, recovery may be had for the services rendered the parent by one of the children against the other children, who can be made to contribute their share ratably, and the claimant may recover this amount from the succession of the deceased parent. In re Estate of Olivier, 18 La.Ann. 594; Succession of Newton, 33 La.Ann. 621; Succession of Guidry, supra [40 La.A. 671, 4 So. 893]; Latour v. Guillory, 134 La. 332, 64 So. 130; Succession of Templeman, 134 La. 798, 64 So. 718. Succession of Dugas, 215 La. 13, 39 So.2d 750 (1949).
Salvador is entitled to a credit against the $25,000 for services rendered his father. Further, the record shows that Salvador's wife performed a great deal of the work involved in caring for the elder Lomonaco, and there is no presumption of gratuity as to her. The payments of $70.00 per week for five months was intended to partially compensate her for her services. We agree with the trial judge that the amount is reasonable.
The credit given by the trial court of $400.00 per month for 42 months, the period of time in which Salvador cared for his father before the father's death, was an additional credit, given to Salvador, over and above the aforementioned credit to his wife. The value assigned to the services by the trial judge was reasonable and within the trial court's much discretion. It is obvious that the value of replacement of those services is well within the allowance apportioned. The trial court also gave Salvador credit for the money turned over by him to the Succession Administration, as per a prior court order. According to the Tableau of Distribution, this was an amount of $1,874.34. Appellant raised no objection to this credit, nor can we find any reason to disallow it. It was clearly within the trial court's authority to grant such credit.
Therefore, this portion of the judgment is amended to reflect that the sum of $25,000, less the credits given, is owed by Salvador Lomonaco, to the successions of his mother and father in the following amounts:

 $ 25,000
 - 16,800 ($400 × 42 months for services
 rendered by Sal)

*787
 - 1,400 (paid to Mrs. Lomonaco for her
 services at $280 for 5 months)
 - 2,500 (funeral expenses)
 - 2,500 (medical expenses)
 _______
$1,800.00
$1,874.34  returned to succession by Sal, as
 per Tableau of Distribution
 500.00  taken from safe
_________
$1,374.34  credit for funds returned
$1,800.00
-1,374.34  credit
_________
$ 425.66  Total owed by Sal

Finally, we hold that the reconventional demand filed by Salvador was not set for trial on the same date as the original demand and so was not before the court. Therefore, it was error to dismiss it.
For the foregoing reasons, the judgment of the trial court is amended to reflect that Salvador is not obliged to collate any monies considered herein, but simply owes to the succession the sum of $25,000, less the credits given hereinabove, or a net amount of $425.66, and that portion of the judgment is amended, and, as amended, affirmed. The portion of the judgment dismissing defendant's claim for collation is reversed. The remainder of the judgment is affirmed. All costs of the appeal are to be borne by appellant.
REVERSED IN PART, AFFIRMED IN PART, AMENDED, AND, AS AMENDED, AFFIRMED.